Slip Op. 15-73

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **BELL SUPPLY COMPANY, LLC,** | |
| **Plaintiff,** | |
| **v.** | |
| **UNITED STATES,** | |
| **Defendant,** | Before: Claire R. Kelly, Judge |
| **and** | Court No. 14-00066 |
| | Public Version |
| **BOOMERANG TUBE LLC, TMK IPSCO TUBULARS, V&M STAR L.P., WHEATLAND TUBE COMPANY, MAVERICK TUBE CORPORATION, and UNITED STATES STEEL CORPORATION,** | |
| **Defendant-Intervenors.** | |

## OPINION AND ORDER

[Granting Plaintiff's motion for judgment on the agency record and remanding to Commerce.]

Dated: July 9, 2015

<u>Donald Bertrand Cameron</u>, Morris, Manning & Martin, LLP, of Washington, DC, argued for Plaintiff.  With him on the brief were <u>Julie Clark Mendoza</u>, <u>Rudi Will Planert</u>, <u>Brady Warfield Mills</u>, <u>Mary Shannon Hodgins</u>, and <u>Sarah Suzanne Sprinkle</u>.

<u>Loren Misha Preheim</u>, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for Defendant.  With him on the brief were <u>Joyce R. Branda</u>, Acting Assistant Attorney General, <u>Jeanne E. Davidson</u>, Director, and <u>Claudia Burke</u>, Assistant Director.  Of counsel on the brief was <u>Whitney Marie Rolig</u>, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

Roger Brian Schagrin, Schagrin Associates, of Washington, DC, argued for Defendant-Intervenors Boomerang Tube LLC, TMK IPSCO Tubulars, V&M Star L.P., and Wheatland Tube Company.  With him on the brief was John Winthrop Bohn.

Robert Edward DeFrancesco, III, Wiley Rein, LLP, of Washington, DC, argued for Defendant-Intervenor Maverick Tube Corporation.  With him on the brief were Alan Hayden Price and Tessa Victoria Capeloto.

Jeffrey David Gerrish, Skadden Arps Slate Meagher & Flom, LLP, of Washington, DC, argued for Defendant-Intervenor United States Steel Corporation.  With him on the brief were Robert E. Lighthizer and Nathaniel B. Bolin.


Kelly, Judge:  Plaintiff Bell Supply Company, LLC ("Plaintiff" or "Bell Supply") brings this action pursuant to 28 U.S.C. § 1581(c) (2012)[1] and section 516A of the Tariff Act of 1930, 19 U.S.C. § 1516a(a)(2)(B)(vi) (2012),[2] for judicial review of the Final Scope Ruling on Green Tubes Manufactured in the People's Republic of China and Finished in Countries Other than the United States and the People's Republic of China, PD 174–76 at bar codes 3179952-01–03 (Feb 7, 2014) ("Final Scope Ruling")[3] issued by the United States Department of Commerce ("Commerce" or "the Department") to interpret the scope language from the antidumping duty order on Certain Oil Country Tubular Goods From the People's Republic of China, 75 Fed. Reg. 28,551 (Dep't Commerce May 21, 2010) (amended final determination of sales at less than fair value and antidumping duty order) ("ADD Order"), and the countervailing duty order on Certain Oil Country Tubular

---

[1] Further citations to Title 28 of the U.S. Code are to the 2012 edition.

[2] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2012 edition.

[3] The scope inquiry at issue here was initiated for the parallel antidumping duty and countervailing duty cases.  Unless otherwise necessary, the court will cite to the administrative record for the antidumping duty proceeding.

<u>Goods From the People's Republic of China</u>, 75 Fed. Reg. 3,203 (Dep't Commerce Jan. 20, 2010) (amended final affirmative countervailing duty determination and countervailing duty order) ("CVD Order") (collectively "Orders").

Plaintiff moves for judgment on the agency record pursuant to USCIT Rule 56.2 on the grounds that the Final Scope Ruling unlawfully expanded the scope of the Orders and unlawfully ignored the statutory circumvention criteria in 19 U.S.C. § 1677j for when Commerce may include merchandise finished in a third country within the scope of an order.  Further, Plaintiff claims that Commerce's substantial transformation analysis was not supported by substantial evidence and otherwise not in accordance with law.  Br. Pl. Supp. Mot. J. Agency R. 2, 9–11, Sept. 26, 2014, ECF No. 40-1 ("Pl.'s Mot.").  Defendant United States ("Defendant" or "United States") argues that Commerce was not required to conduct a circumvention inquiry pursuant to § 1677j here because that statute "simply provide[s] an *additional* means for Commerce to administer and enforce its orders."  Def.'s Resp. Pl.'s Rule 56.2 Mot. J. Agency R. 9, Jan. 14, 2015, ECF No. 51 ("Def.'s Resp."). Instead, Defendant argues that because the scope ruling required a country of origin determination, Commerce merely "filled a statutory gap by applying its substantial transformation analysis" in its determination that certain oil country tubular goods ("OCTG") from the People's Republic of China ("PRC" or "China") finished in Indonesia were still subject to the Orders.  <u>Id.</u> at 9.  Defendant also contends that its extra-statutory use of substantial transformation analysis was supported by substantial evidence.  <u>Id.</u> at 10.  The court finds Commerce failed to interpret the scope of the Orders and improperly expanded the scope language when it used a substantial transformation analysis to

include OCTG finished in third countries without analyzing the language of the relevant

Orders.

## BACKGROUND

The Orders cover certain OCTG from the PRC.  CVD Order, 75 Fed. Reg. at 3,203;

ADD Order, 75 Fed. Reg. at 28,551.   The scope of the Orders define the subject

merchandise as

> certain oil country tubular goods ("OCTG"), which are hollow steel products
> of circular cross-section, including oil well casing and tubing, of iron (other
> than cast iron) or steel (both carbon and alloy), whether seamless or
> welded, regardless of end finish (e.g., whether or not plain end, threaded,
> or threaded and coupled) whether or not conforming to American Petroleum
> Institute ("API") or non-API specifications, whether finished (including
> limited service OCTG products) or unfinished (including green tubes and
> limited service OCTG products), whether or not thread protectors are
> attached. The scope of the order also covers OCTG coupling stock.
> Excluded from the scope of the order are: casing or tubing containing 10.5
> percent or more by weight of chromium; drill pipe; unattached couplings;
> and unattached thread protectors.

CVD Order, 75 Fed. Reg. at 3,203–04; ADD Order, 75 Fed. Reg. at 28,553.  As Plaintiff

claims that Commerce has acted contrary to law and that Commerce's statements

regarding its analysis sometimes differ, the court's discussion of the administrative

proceedings below is extensive.

**Request for Scope Ruling**

Defendant-Intervenors United States Steel Corporation, TMK IPSCO, Wheatland

Tube Company, Boomerang Tube LLC, and V&M Star L.P. ("Defendant-Intervenors" or

"Petitioners"), Petitioners below, requested the scope ruling at issue to determine

"whether unfinished [OCTG] (including green tubes) produced in the PRC, regardless of

where the finishing of such OCTG takes place, are expressly included in the scope of the antidumping and countervailing duty *Orders* on OCTG from the PRC." Preliminary Scope Ruling on Green Tubes Manufactured in the People's Republic of China (PRC) and Finished in Countries Other than the United States and the PRC at 1, CD 48 at bar codes 3138529-01 (May 31, 2013) ("Preliminary Scope Ruling"). Petitioners requested the ruling after U.S. Customs and Border Protection ("CBP") determined that the country of origin for "green tube and unfinished seamless steel pipe made in India, China or Russia" subsequently heat treated in certain third countries was a product of that third country. Petitioner's Application for Scope Ruling at Ex. 2, PD 1–3 at bar code 3065185-01 (Mar. 26, 2012) (CBP Ruling N118180: The country of origin of steel tubing processed in Korea or Japan from green tubes originating in India, China or Russia) ("Petition").

On March 26, 2012, Petitioners sought an expedited ruling from Commerce. Id. at 6, 20. Petitioners asserted "CBP's determination that unfinished OCTG from China that is finished in third countries through heat treatment is substantially transformed into products of those third countries directly conflicts with the scope of the . . . [O]rders on OCTG from China . . . ." Id. at 5. Petitioners feared "that the CBP ruling [was] likely to create confusion" and "lead to the improper designation of the country of origin of Chinese OCTG that is finished in any third country." Id.

Petitioners claimed that under the factors enumerated pursuant to 19 C.F.R. § 351.225(k)(1) (2013),[4] "the plain language of the . . . [O]rders expressly covers

---

[4] Further citations to Title 19 of the Code of Federal Regulations are to the 2013 edition.

unfinished OCTG produced in China, regardless of where such OCTG is finished."[5]  Id.

at 6.  Petitioners argued that "[t]he language of the . . . antidumping or countervailing duty

order is the cornerstone of the analysis of the order's scope," and that the plain language

of the Orders must therefore govern whether the merchandise is covered by the scope.

Id. at 6–7.  Petitioners also maintained that the scope of an order "is defined by the type

of merchandise and by the country of origin," and that Commerce uses its substantial

transformation test to determine the country of origin.  Id. at 7.  Petitioners argued that

the substantial transformation analysis further bolstered the conclusion that OCTG

finished in third countries is within the scope.  See id. at 11–12, 20.  Petitioners also

claimed that the plain language of the Orders was clear, and, therefore, Commerce did

not need to do an analysis using the § 351.225(k)(2) factors.[6]  See id. at 10.  Nonetheless,

Petitioners argued even if Commerce reached the (k)(2) factors, they would show OCTG

heat treated and finished in third countries is within the scope of the Orders.  Id. at 10,

20–23.

Petitioners further claimed that "where the scope covers both finished and

unfinished merchandise, it is the Department's practice to treat such merchandise as in

---

[5] For scope inquiries conducted pursuant to 19 C.F.R. § 351.225(k)(1), Commerce is to consider the following: "The descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of [Commerce] (including prior scope determinations) and the Commission."  19 C.F.R. § 351.225(k)(1).

[6] Per regulation, when the criteria under 19 C.F.R. § 351.225(k)(1) are not dispositive, Commerce is to consider the 19 C.F.R. § 351.225(k)(2) factors, which include "(i) The physical characteristics of the product; (ii) The expectations of the ultimate purchasers; (iii) The ultimate use of the product; (iv) The channels of trade in which the product is sold; and (v) The manner in which the product is advertised and displayed."  19 C.F.R. § 351.225(k)(2)(i)–(v).

the scope of the order regardless of whether it is finished in third countries prior to importation into the United States, so long as substantial transformation does not take place in the third country." Preliminary Scope Ruling at 7; see also Petitioner's Response to Comments on Scope Inquiry at 17–18, PD 18 at bar code 3079599-01 (June 5, 2012). Petitioners asserted that "the well-established rule at the time of the filing of the petitions was that heat treatment of OCTG in a third country was not enough to substantially transform the OCTG to a product of the third country," and, therefore, "explicit reference to third-country processing was not necessary in order to include OCTG from the PRC that was heat treated in third countries within the scope of the *Orders*." Preliminary Scope Ruling at 8.

In response, Bell Supply, a U.S. importer of OCTG sourced from Chinese green tubes but heat treated and finished in Indonesia, argued that "nowhere in the very specific and carefully crafted scope language of the[] . . . [O]rders, or in any prior antidumping or countervailing duty investigation of OCTG, has the Department ever indicated that OCTG that is finished and heat-treated in third countries is intended to be covered." Bell Supply's Response to Petition for Scope Ruling at 3, PD 11 at bar code 3071885-01 (Apr. 26, 2012). Bell Supply claimed that "where the Department intends to include merchandise finished in third countries within an AD or CVD order the Department's practice is to do so expressly." Id. Bell Supply asserted that CBP's ruling did "not in fact 'conflict' with any language in the OCTG [O]rders, which do not by their terms apply to OCTG finished and heat treated in third countries," and that it "did no more than reaffirm the country of origin rule that had been in effect at the time of the OCTG [O]rders, and which stretches back

more than 20 years." Id. at 5.  Based on CBP determinations and the International Trade Commission's ("ITC") treatment of U.S.-finished OCTG sourced from subject green tube, Bell Supply contended "that the long established rule is that heat treatment and finishing determines country of origin for OCTG."  Preliminary Scope Ruling at 11; see also Bell Supply's Response to Scope Initiation at 3–4, PD 33 at bar code 3086198-01 (July 13, 2012) (citing HQ 088224 (Jan. 31, 1991)).

On June 20, 2012, Commerce found that "it [could not] determine whether the scope of the . . . [O]rders . . . expressly includes PRC-produced green tubes that are further processed in a third country prior to shipment to the United States based upon Petitioners' application for a scope clarification as contemplated by 19 CFR [§] 351.225(d) and the subsequently submitted interested party comments."  Scope Initiation Letter at 1, PD 25 at bar code 3082712-01 (June 20, 2012).  Commerce therefore initiated a formal scope inquiry pursuant to 19 C.F.R. § 351.225(e).[7]  See generally id.; see also Preliminary Scope Ruling at 1–2.

**The Preliminary Scope Ruling**

After receiving comments, Commerce noted its basis of authority in the Preliminary Scope Ruling and stated it was "conducting this scope inquiry pursuant to 19 CFR

---

[7] When Commerce "finds that the issue of whether a product is included within the scope of an order or a suspended investigation cannot be determined based solely upon the application and the descriptions of the merchandise referred to in paragraph (k)(1) of this section, the Secretary will notify by mail all parties on the Department's scope service list of the initiation of a scope inquiry."  19 C.F.R. § 351.225(e).

[§] 351.225(k)."  Preliminary Scope Ruling at 5.  Commerce also stated it would consider the language of the Orders and the (k)(1) factors.  Id. at 4.

Consistent with the regulatory language, Commerce recognized that if the § 351.225(k)(1) factors were dispositive, Commerce would issue a final determination on the matter, but if not, Commerce would proceed to consider the § 351.225(k)(2) factors. Id. at 4.  Yet, after acknowledging the language of 19 C.F.R. § 351.225(k)(1) and (k)(2), Commerce proceeded to forgo the § 351.225(k)(1) and (k)(2) analyses, stating "[o]ur analysis concerns whether the processing that takes place in third countries constitutes a substantial transformation . . . ."[8]  Id. at 5.

Commerce stated that "[t]he scope of an order describes the merchandise that is subject to the order.  That description must be applied in conjunction with the country subject to the order."  Id. at 13.  Therefore, Commerce reasoned that "the merchandise in the scope must be a product of the country under order."  Id. (citing E.I. Du Pont de Nemours & Co. v. United States, 22 CIT 370, 375, 8 F. Supp. 2d 854, 859 (1998)).

Commerce framed Petitioners' argument as a request that Commerce "determine that PRC-sourced, unfinished OCTG is within the scope of the Orders, regardless of where it is finished."  Id.  Commerce refuted this argument, stating that

> [a]lthough PRC-sourced unfinished OCTG imported into the United States is clearly covered by the Orders, it does not necessarily follow that unfinished OCTG that is finished in third countries is also covered by the Orders, because the processing performed in the third country may

---

[8] Commerce then proceeded to outline the five factors used in its substantial transformation analysis to determine "whether conversion in third countries of unfinished OCTG (or green tube) imported from the PRC constitutes a substantial transformation . . . ."  Id. at 5–6.

substantially transform the merchandise such that the country of origin is not the PRC.

Id.  Commerce explained that despite Petitioners' arguments, "[t]he circumstances at issue in this inquiry, and those which the Department must consider, are too varied and nuanced to permit a simple, blanket statement which assumes that anything produced from PRC-sourced green tube is within the scope of the *Orders*."  Id.

Commerce concluded that "Petitioners have not pointed to any discussion of these issues from the investigations of these cases, nor has the Department found or reviewed such discussion in the records of the investigations related to these *Orders* that would resolve this issue."  Id.  Based on its review, Commerce determined that "[a]ccordingly, we must investigate whether the third-country processing at issue here is substantial enough to confer a new country of origin upon the product, or whether the processing is such to maintain the original country of origin, and maintain coverage of the *Orders*."  Id.  Finally, Commerce concluded that

> seamless unfinished OCTG manufactured in the PRC and finished in countries other than the United States and the PRC *(i.e.*, third countries) is within the scope of the *Orders* where 1) the finishing consists of heat treatment by quenching and tempering, upsetting and threading (with integral joint), or threading and coupling; and 2) the products are made to the following specifications and grades:  API specification 5CT, grades P-110, T-95 and Q-125.

Id. at 32.

In Bell Supply's comments to the Preliminary Scope Ruling, it argued that Commerce's determination improperly expanded the scope of the Orders to cover OCTG finished in third countries.  Bell Supply claimed that Commerce failed to identify language

in the actual Orders as a predicate for its interpretation.  Bell Supply's Comments on the Preliminary at 2–3, CD 50 at bar code 3141676-01 (June 24, 2013) (citing Preliminary Scope Ruling at 13).  Bell Supply further argued that "in light of the established industry practice that the country of origin is the country where the heat treatment takes place, the scope language recommended by the Petitioners and adopted by the Department cannot reasonably be interpreted to cover OCTG that has been heat treated and finished in third countries."  Id. at 4.  However, Bell Supply contended that even if one assumed "the scope language of the . . . [O]rders alone fails conclusively to establish that OCTG heat treated and finished in Indonesia is outside the scope of the [O]rders, the Department's regulations require it to resolve any ambiguity in the stated scope by first considering" the § 351.225(k)(1) factors, which confirmed that the Orders were not intended to cover OCTG finished in third countries.  Id. at 5–6.  Relying upon the language of the Orders and the underlying Commerce and ITC investigations, Bell Supply argued the Petition intended to cover finished OCTG from China only.  Id. at 6–12.

**The Final Scope Ruling**

In the Final Scope Ruling, Commerce once again invoked its regulations governing scope inquiries in 19 C.F.R. § 351.225, including specifically the § 351.225(k)(1) and (k)(2) considerations.  See Final Scope Ruling at 4.  But Commerce again shifted its inquiry to a substantial transformation analysis.  Id. at 4, 7–8.  In rejecting Bell Supply's arguments that the language of the Orders did not support the Preliminary Scope Ruling, Commerce stated that Bell Supply's argument "forget[s] the fact that we are analyzing a country-of-origin question in this scope inquiry, not a question pertaining to the

interpretation of the scope under 19 CFR [§] 351.225(k) or the line of cases such as *Duferco Steel, Inc. v. United States*." Id. at 7.  In Commerce's view, "[w]hether or not the scope language is clear under 19 CFR [§] 351.225(k) is irrelevant to the separate question of whether subject merchandise was substantially transformed such that it is now the product of a different, non-subject country." Id. at 9.

Commerce reasoned that "the physical merchandise and the country-of-origin are two separate parameters for defining merchandise subject to an order." Id.  According to Commerce, the scope unambiguously covered finished and unfinished OCTG from China and that was "why [Commerce was] examining whether substantial transformation has occurred in a third country." Id.  Commerce found that, since there was no substantial transformation, "the Department's Preliminary Scope Ruling has not interpreted the scope of these *Orders* in any manner which alters the scope itself." Id.  Furthermore, Commerce stated that it was not conducting a circumvention analysis pursuant to 19 U.S.C. § 1677j because "Petitioners' original request was not restricted to a particular third-country or manufacturer or processor, and, therefore, [§ 1677j(b)] was not applicable." Id. at 15.

Commerce determined that OCTG finished via heat treatment was not substantially transformed and the country of origin was still the PRC.  See generally id. Thus, Commerce reasoned that the finished OCTG processed in a third country using heat treatment would still be subject to the Orders on OCTG from the PRC.  Commerce concluded

> seamless unfinished OCTG manufactured in the PRC and finished in third countries is within the scope of the *Orders,* where 1) the finishing consists of heat treatment by quenching and tempering, upsetting and threading

(with integral joint), or threading and coupling; and 2) the products are made
to [certain enumerated] specifications and grades . . . .

Id. at 24.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction over Plaintiff's claim under 28 U.S.C. § 1581(c) and 19

U.S.C. § 1516a(a)(2)(B)(vi).  The court must "hold unlawful any determination, finding, or

conclusion found . . . to be unsupported by substantial evidence on the record, or

otherwise not in accordance with law . . . ."  19 U.S.C. § 1516a(b)(1)(B)(i).

## DISCUSSION

In interpreting the scope of the Orders, Commerce is limited to clarifying the scope

based on the actual words of the Orders.  See 19 C.F.R. § 351.225(k); Duferco Steel, Inc.

v. United States, 296 F.3d 1087, 1097 (Fed. Cir. 2002).  Plaintiff argues Commerce

unlawfully expanded the scope of the Orders because Commerce failed to identify scope

language to include green tube heat treated in third countries.  Pl.'s Mot. 8, 12–19.

Defendant argues that Commerce's determination was lawful because it has inherent

authority to determine country of origin based on its power to enforce and administer the

antidumping and countervailing duty laws.   Therefore, Defendant contends Commerce

was not constrained to the words of the Orders in making its determination.  Def.'s Resp.

9–10, 21–25.  Here, Commerce did not look to the words of the Orders to find that green

tube from China later heat treated in Indonesia was within the scope, and by doing so

Commerce acted contrary to law.

The language of an order dictates its scope.  Commerce has broad authority "to interpret and clarify its antidumping duty orders."  Ericsson GE Mobile Commc'ns, Inc. v. United States, 60 F.3d 778, 782 (Fed. Cir. 1995) (citing Smith Corona Corp. v. United States, 915 F.2d 683, 686 (Fed. Cir. 1990)), as corrected on reh'g (Sept. 1, 1995).  See also King Supply Co., LLC v. United States, 674 F.3d 1343, 1349 (Fed. Cir. 2012).  However, Commerce may not interpret an order "so as to change the scope of that order, nor can Commerce interpret an order in a manner contrary to its terms."  Eckstrom Indus., Inc. v. United States, 254 F.3d 1068, 1072 (Fed. Cir. 2001) (citing Wheatland Tube Co. v. United States, 161 F.3d 1365, 1370 (Fed. Cir. 1998)).  Furthermore, "[s]cope orders may be interpreted as including subject merchandise only if they contain language that specifically includes the subject merchandise or may be reasonably interpreted to include it."  Duferco, 296 F.3d at 1089.  Although the petition and the investigation proceedings may aid in Commerce's interpretation of the final order, the order itself "reflects the decision that has been made as to which merchandise is within the final scope of the investigation and is subject to the order."  Id. at 1096–97.  Therefore, if Commerce conducts a scope ruling without reference to the language of an order it is not interpreting that order.

In its regulations, Commerce specifies the circumstances and procedures when clarifying the scope of an order may be necessary.  See generally 19 C.F.R. § 351.225.

In identifying when the scope of an order may need clarification, Commerce's regulations

provide:

> Issues arise as to whether a particular product is included within the scope
> of an antidumping or countervailing duty order or a suspended investigation.
> Such issues can arise because the descriptions of subject merchandise
> contained in the Department's determinations must be written in general
> terms. At other times, a domestic interested party may allege that changes
> to an imported product or the place where the imported product is
> assembled constitutes circumvention under [§ 1677j]. When such issues
> arise, the Department issues "scope rulings" that clarify the scope of an
> order or suspended investigation with respect to particular products.

19 C.F.R. § 351.225(a).[9]   Commerce's regulations then provide the following guidance

regarding the interpretation of the scope language of an order:

> [I]n considering whether a particular product is included within the scope of
> an order or a suspended investigation, [Commerce] will take into account
> the following:
> (1) The descriptions of the merchandise contained in the petition, the
> initial investigation, and the determinations of [Commerce] (including
> prior scope determinations) and the Commission.
> (2) When the above criteria are not dispositive, [Commerce] will further
> consider:
> > (i) The physical characteristics of the product;
> > (ii) The expectations of the ultimate purchasers;
> > (iii) The ultimate use of the product;
> > (iv) The channels of trade in which the product is sold; and
> > (v) The manner in which the product is advertised and displayed.

19 C.F.R. § 351.225(k).   Thus, in interpreting the words of an order, Commerce may look

to the petition, the investigation and past scope determinations to aid it in its interpretation

---

[9] The regulations provide that Commerce may self-initiate a scope inquiry, stating that if Commerce "determines from available information that an inquiry is warranted to determine whether a product is included within the scope of an antidumping or countervailing duty order or a suspended investigation, [Commerce] will initiate an inquiry . . . ."  19 C.F.R. § 351.225(b).

of the scope language.  Id. § 351.225(k)(1); see Smith Corona, 915 F.2d at 685.  If the considerations outlined in § 351.225(k)(1) are not dispositive, then Commerce may consider the factors outlined in § 351.225(k)(2).  19 C.F.R. § 351.225(k)(2).

The scope of an order necessarily includes not just the class or kind of merchandise covered by an order but also the countries subject to an order.  When Commerce determines that dumping has occurred and the ITC finds injury, Commerce must issue an order that "includes a description of the subject merchandise, in such detail as the administering authority deems necessary."  19 U.S.C. § 1673e(a)(2); see also 19 U.S.C. § 1673d(c)(2).  Thus, an order contains the description of the merchandise to which the order will apply.  See generally Duferco, 296 F.3d at 1096.  The statute further defines subject merchandise as "the class or kind of merchandise that is within the scope of an investigation, a review, a suspension agreement, an order under this subtitle or section 1303 of this title, or a finding under the Antidumping Act, 1921."  19 U.S.C. § 1677(25).  By definition, the scope defines the subject merchandise with reference to more than just a description of its class or kind.  Antidumping and countervailing duties orders are country specific because they only apply to merchandise from particular countries.  See generally 19 U.S.C. § 1673; see also 19 U.S.C. §§ 1677j, 1677b(a)(3).  Thus, the scope of an order necessarily includes the subject country or countries in addition to a description of the subject merchandise.

Under the statute and regulations, as interpreted by the U.S. Court of Appeals for the Federal Circuit, the words of an order must serve as a basis for the inclusion of merchandise within the scope of the order.  Duferco, 296 F.3d at 1096–97.  Commerce

may use the § 351.225(k)(1) factors to clarify the words of an order.  Id. at 1097 (citing

Smith Corona, 915 F.2d at 686).  If the (k)(1) factors are not dispositive, then Commerce

considers the factors under (k)(2) to clarify the order.  19 C.F.R. § 351.225(k)(2).  Given

this framework, if the words of the order, as clarified by the (k)(1) and (k)(2) factors, do

not support the inclusion of the merchandise within the scope of the order, then the

merchandise is outside the order. Commerce may nonetheless seek to include

merchandise outside the scope of an order through specific statutory provisions set forth

by Congress, in this case through 19 U.S.C. § 1677j(b).   Section 1677j(b) allows

Commerce to include merchandise of the same class or kind as subject merchandise that

is "completed or assembled in other foreign countries . . . within the scope of [an

antidumping or countervailing duty] order," as long as the merchandise meets certain

enumerated statutory requirements. [10]  See 19 U.S.C. § 1677j(b).

　　　Here, Commerce did not look to the words of the Orders to include the

merchandise nor did it seek to include the merchandise pursuant to 19 U.S.C. § 1677j(b).

In fact, initially Commerce found no scope language that expressly included OCTG

finished in third countries.  See Scope Initiation Letter at 1.  Although Commerce

professed to be analyzing descriptions of the merchandise pursuant to 19 C.F.R.

§ 351.225(k), in its Preliminary Ruling, Commerce found that "[a]lthough PRC-sourced

unfinished OCTG imported into the United States is clearly covered by the Orders, it does

not necessarily follow that unfinished OCTG that is finished in third countries is also

---

[10] Commerce's own regulations further clarify this authority.  See 19 C.F.R. § 351.225(h).

covered by the *Orders* . . . ."  Preliminary Scope Ruling at 13.  Commerce further found

that it could not make "a simple, blanket statement which assumes that anything produced

from PRC-sourced green tube is within the scope of the *Orders*."  Id.

Commerce, apparently continuing to track the criteria in § 351.225(k)(1), looked to

the record of the investigation for interpretive guidance, but found nothing that indicated

whether OCTG finished in third countries should be included in the scope of the Orders.[11]

Id.  In concluding that its (k)(1) analysis was not dispositive, Commerce stated that

"Petitioners have not pointed to any discussion of these issues from the investigations of

these cases, nor has the Department found or reviewed such discussion in the records

of the investigations related to these *Orders* that would resolve this issue."[12] Id.

Unable to conclude that the Orders covered the merchandise by virtue of its

analysis up to that point, rather than proceeding to a consideration of the (k)(2) factors,

Commerce shifted its focus to a substantial transformation analysis, stating that ". . . we

must investigate whether the third-country processing at issue here is substantial enough

to confer a new country of origin upon the product, or whether the processing is such to

---

[11] Commerce's analytical lens changes throughout its determination.  At times it is unclear whether Commerce was looking for interpretive guidance under either the § 351.225(k)(1) factors, the § 351.225(k)(2) factors, both or neither.  Ultimately, in its Final Scope Ruling, Commerce disclaimed any such interpretive efforts, stating that an interpretive analysis was irrelevant.  Final Scope Ruling at 9.

[12] Prior to the Preliminary Scope Ruling, the parties to the scope inquiry argued extensively about whether the § 351.225(k)(1) factors evidenced an intent that the scope included OCTG finished in third countries, including the language of the petition, the focus of the investigation, and various determinations by Commerce and the ITC.  See Petition at 6–7.  Petitioners also argued that an interpretation of the scope language in light of the (k)(2) factors confirmed that the scope of the Orders meant to include OCTG finished in third countries.  See id. at 10–11.

maintain the original country of origin, and maintain coverage of the *Orders*."   Id.
Commerce's substantial transformation analysis led it to conclude that OCTG finished in
Indonesia was not substantially transformed.   See id. at 13–32.   Thus, Commerce found
that OCTG finished in the same manner in any third country was still a product of China
and, consequently, subject to the Orders.   See id. at 32.

After at least attempting to apply the (k)(1) and (k)(2) factors in its preliminary
finding, Commerce abandoned the interpretive framework entirely in the Final Scope
Ruling in favor of a substantial transformation test.   In the Final Scope Ruling, Commerce
found § 351.225(k) inapplicable in its entirety stating that "[t]his is not a case where
[Commerce is] called on to analyze and determine the meaning of the scope language
pursuant to 19 CFR [§] 351.225(k)," but "[r]ather, this is a case involving a country-of-
origin determination, *i.e.*, whether there was a substantial transformation in a third
country."   Final Scope Ruling at 9.   In Commerce's opinion, "[w]hether or not the scope
language is clear under 19 CFR [§] 351.225(k) is irrelevant to the separate question of
whether subject merchandise was substantially transformed such that it is now the
product of a different, non-subject country."   Id.

Although Commerce identified its substantial transformation analysis as distinct
from an analysis of the words of the Orders, it did not identify adequate authority for
performing such an analysis given the existence of 19 U.S.C § 1677j(b).   Commerce
found the words in the Orders clearly covered OCTG from China, and, therefore,
Commerce had the power to find OCTG finished in third countries within the scope if the
finishing process did not constitute a substantial transformation.   Id.   Commerce inferred

this authority to substitute substantial transformation analysis for the factors provided in the statute and its regulations for itself rather than basing it on any interpretation of the words of the Orders.  Cf. Mid Continent Nail Corp. v. United States, 725 F.3d 1295, 1303–1305 (Fed. Cir. 2013) (holding that Commerce could attempt to develop a standard for interpreting scope language in a mixed media situation based on both the (k)(1) factors and the (k)(2) factors to the extent they were relevant to the mixed media inquiry).[13]  In both the Preliminary and Final Scope Rulings, Commerce referred to the need to look to the language of the Orders and even made reference to the interpretive factors provided by its regulations, but then eschewed an interpretive analysis in favor of a substantial transformation analysis.  Preliminary Scope Ruling at 13–14; Final Scope Ruling at 3–4, 9.  Commerce simply concluded that it could conduct this analysis instead of applying the statutory framework mandated by 19 U.S.C. § 1677j(b) based upon its practice of employing a substantial transformation analysis in cases that did not implicate 19 U.S.C. § 1677j(b).  Final Scope Ruling at 15.  It failed to adequately explain why 19 U.S.C. § 1677j(b) did not apply to this case or why the words of the Orders supported the inclusion of the merchandise or the use of the substantial transformation analysis.[14]

---

[13] It may be that Commerce's substantial transformation analysis could be appropriate in an interpretive context if such an analysis were triggered by words in an order.  Cf. Mid Continent Nail, 725 F.3d at 1303 (providing that Commerce's interpretive analysis must be drawn from the words of the order).  However, the possibility that Commerce could justify a substantial transformation analysis based upon the words of the Orders is not before the court because Commerce abandoned its interpretive efforts.

[14] It is debatable whether there is in fact any scope language that could reasonably be interpreted to support a finding that Chinese green tubes heat treated and processed into finished OCTG in third countries were intended to be included in the scope of the Orders,

(footnote continued)

Congress enacted 19 U.S.C. § 1677j(b) to specifically address situations where merchandise is further processed in a third country.  See H.R. Rep. No. 100–576, at 599–600 (1988), reprinted in 1988 U.S.C.C.A.N. 1547, 1632–33.  Commerce incorrectly claimed that § 1677j(b) could only apply in response to allegations of circumvention in a petition.  See 19 C.F.R. § 351.225(b); see also Preliminary Scope Ruling at 30; Final Scope Ruling at 15.  Since § 1677j(b), by its terms, expressly applies where merchandise is further processed in a third country, Commerce does not have discretion to employ an alternative analysis.  In order to include merchandise that is otherwise outside of an order, Commerce must apply the statute Congress enacted for that purpose and must satisfy the enumerated requirements within the statute.

---

or whether a substantial transformation test could be used to answer the question. Defendant appears to concede that Commerce has already reviewed the language of the scope and the record of the investigation, but it found the language does not suggest that unfinished green tube from the PRC that is subsequently heat treated and finished into OCTG in a third country was covered by the Orders.  Oral Arg., 37:06–37:27, May 8, 2015, ECF No. 75.  In response to written questions posed by the court to the parties, counsel for Defendant stated the following:

> Um I think question . . . question three was . . . is it Commerce's position that it could not, pursuant to 225(k) and Duferco, interpret the scope language as written . . . to find that green tube from China was green tube um . . . would be covered by the orders?  That's correct . . . because of everything I said earlier . . . whether or not this is in fact from China.

See id.; see also Questions for Oral Argument scheduled for May 8, 2015 4, April 8, 2015, ECF No. 74.  However, whether there is substantial evidence in the record to support a decision by Commerce that the Orders could have been interpreted to include OCTG processed in third countries is not before the court.  Commerce's Final Scope Ruling does not rely upon the language of the Orders.

Defendant makes several arguments that Commerce can conduct a substantial transformation analysis to reach the result it did here without reference to the words of the Orders.  First, Defendant claims Commerce power stems from its gap filling authority to define "foreign merchandise" as that term is used in 19 U.S.C. § 1673(1).  See Def.'s Resp. 13–15, 21–22.  Defendant further claims that the scope of the Orders here was silent on multi-country production, and, therefore, Commerce did not need to interpret any of the actual language of the scope.  Id. at 16–17.  Second, Commerce claims that its inherent power to administer antidumping and countervailing duty orders empowers it to employ a substantial transformation test.  Id. at 21–22.  Third, Defendant asserts Commerce was not required to do a circumvention analysis under 19 U.S.C. § 1677j(b) instead of its own substantial transformation analysis in a scope ruling because the two analyses serve different purposes.  Id. at 22–24.  Finally, Defendant argues that the physical description and the country of origin of merchandise are two distinct aspects of scope and Commerce can forgo the constraints of Duferco in favor of a substantial transformation analysis for the latter.  Id. at 13–15, 24–25.  Defendant's arguments are unavailing in the face of Duferco, Commerce's own regulations, and § 1677j(b).

Defendant claims that Commerce's authority stems from two separate gaps: one gap in the statute and the other in the Orders.  See Def.'s Resp. 13–15, 21–22.  In support of the argument that Commerce is filling a statutory gap, Defendant cites E.I. Du Pont de Nemours & Co. v. United States, claiming Commerce has gap filling authority to define "foreign merchandise" in the statute.  See E.I. Du Pont, 22 CIT at 373–74, 8 F. Supp. 2d at 858; Def.'s Resp. 14, 21 (citing E.I. Du Pont, 22 CIT at 373–74, 8 F. Supp. 2d at 858).

See also Def.-Intervenor Maverick Tube Corp.'s Resp. to Pl.'s Br. Supp. Mot. J. 22, Jan.

14, 2015, ECF No. 60 (citing E.I. Du Pont, 22 CIT at 373–74, 8 F. Supp. 2d at 858)

("Maverick's Resp."); Mem. in Opp'n to Pl.'s Mot. J. Agency R. by Def.-Intervenor United

States Steel Corp. 15–16, Jan. 14, 2015, ECF No. 57 (citing E.I. Du Pont, 22 CIT at 373–

74, 8 F. Supp. 2d at 858) ("U.S. Steel's Resp.").   In E.I. Du Pont, the domestic importer

Du Pont manufactured polyvinyl alcohol ("PVA") in Taiwan using its domestically

produced vinyl acetate monomer ("VAM").   E.I. Du Pont, 22 CIT at 372, 8 F. Supp. 2d at

857.   Commerce found the final processing in Taiwan substantially transformed the

domestic VAM into foreign PVA, subjecting it to the antidumping duty order.   E. I. Du Pont,

22 CIT at 372, 8 F. Supp. 2d at 857.   The court held that the word "foreign" in 19 U.S.C.

§ 1673(1) was undefined, giving Commerce discretion to employ the substantial

transformation test to determine whether domestic VAM had become foreign PVA.   E. I.

Du Pont, 22 CIT at 373–74, 8 F. Supp. 2d at 858.

Here, Defendant can point to no such ambiguity that would empower Commerce

to employ a substantial transformation analysis.   In other words, whether the OCTG is

foreign is not at issue in this case.   The question here is whether subject merchandise

subsequently processed in third countries can be included in an order.   Congress has

spoken to the precise issue in this case.   The statute in 19 U.S.C. § 1677j(b) speaks to

the situation where subject merchandise is further processed in a foreign country.

Defendant also argues the silence in the Orders creates a separate gap for it to fill.

Def.'s Resp. 16.   Defendant theorizes that the scope's silence regarding multi-country

production empowers Commerce to conduct a substantial transformation analysis.   Id.

However, a gap in an order written by Commerce is not the same as a gap in a statute written by Congress.  Commerce cannot delegate to itself the power to expand the reach of an order through silence.  Moreover, the Court of Appeals for the Federal Circuit has emphasized that "Commerce's order must be enforced based on what the order actually says, not on what Commerce wished the order had said."  Belgium v. United States, 551 F.3d 1339, 1348 (Fed. Cir. 2009) (citing Duferco, 296 F.3d at 1097–98).

Second, Defendant argues Commerce's power stems from its inherent authority to administer the antidumping and countervailing duty statute, effectively unconstrained by Duferco.  Def.'s Resp. 21–22; see also Final Scope Ruling at 11–12.  Commerce's authority to administer the antidumping and countervailing duty laws is broad, but it is not unlimited.  Commerce administers the statute in the first instance when it writes an order. See Duferco, 296 F.3d at 1097.  In doing so, Commerce identifies the subject country or countries in the language of an order.  Additionally, Commerce can, where appropriate, describe in the words of an order any further processing operations that are performed in third countries, thereby including those specific production processes occurring in third countries within the order's scope.  See, e.g., Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China, 77 Fed. Reg. 73,018, 73,018–19 (Dep't Commerce Dec. 7, 2012) (amended final determination of sales at less than fair value and antidumping duty order); Dynamic Random Access Memory Semiconductors from the Republic of Korea, 68 Fed. Reg. 47,546, 47,546 (Dep't Commerce Aug. 11, 2003) (notice of countervailing duty order).  Thereafter, Commerce administers an order by interpreting the language it wrote to determine whether particular

merchandise is included within the scope of the order.  Commerce undoubtedly has authority to administer the Orders in these ways, but its authority is ultimately constrained by parameters set by Congress and the Court of Appeals for the Federal Circuit.

Congress's enactment of 19 U.S.C. § 1677j(b) expressly authorizes Commerce to administer an order in those cases where merchandise produced in a country subject to an order has been subsequently processed in third countries, which forecloses Commerce's discretion to employ a substantial transformation analysis in such cases. See generally 19 U.S.C. § 1677j(b).  Section 1677j(b) requires Commerce to make five findings in order to include merchandise not already included in an antidumping or countervailing duty order because it is completed or assembled in other foreign countries and subsequently imported into the United States.  Id. § 1677j(b)(1)(A)–(E).  First, the merchandise must be "of the same class or kind as any merchandise produced in a foreign country that is the subject of [an antidumping or countervailing duty order] . . . ." Id. § 1677j(b)(1)(A).     Second, the merchandise must be "completed or assembled in another foreign country from merchandise which--(i) is subject to such order or finding, or (ii) is produced in the foreign country with respect to which such order or finding applies . . . ." Id. § 1677j(b)(1)(B).  Additionally, Congress bound Commerce's discretion by also requiring that

> (C) the process of assembly or completion in the foreign country referred to in subparagraph (B) is minor or insignificant,
> (D) the value of the merchandise produced in the foreign country to which the antidumping duty order applies is a significant portion of the total value of the merchandise exported to the United States, and
> (E) the administering authority determines that action is appropriate under this paragraph to prevent evasion of such order or finding,

before Commerce "may include such imported merchandise within the scope of such order . . . ." Id. § 1677j(b)(1)(C)–(E).[15]  The court is not prepared to accept that Congress would have provided such a detailed list of requirements and considerations binding Commerce's discretion to include merchandise completed or assembled in third countries in an order if Congress intended substantial transformation and anticircumvention to apply concurrently with Commerce having discretion to choose whichever framework it sees fit.

---

[15] The statute lists various considerations Congress intended Commerce to weigh in its § 1677j(b)(1)(C) determination of "whether the process of assembly or completion is minor or insignificant," including

> (A) the level of investment in the foreign country,
>
> (B) the level of research and development in the foreign country,
>
> (C) the nature of the production process in the foreign country,
>
> (D) the extent of production facilities in the foreign country, and
>
> (E) whether the value of the processing performed in the foreign country represents a small proportion of the value of the merchandise imported into the United States.

19 U.S.C. § 1677j(b)(2).  In exercising its discretion "to include merchandise assembled or completed in a foreign country," Commerce further

> shall take into account such factors as--
>
> (A) the pattern of trade, including sourcing patterns,
>
> (B) whether the manufacturer or exporter of the merchandise described in paragraph (1)(B) is affiliated with the person who uses the merchandise described in paragraph (1)(B) to assemble or complete in the foreign country the merchandise that is subsequently imported into the United States, and
>
> (C) whether imports into the foreign country of the merchandise described in paragraph (1)(B) have increased after the initiation of the investigation which resulted in the issuance of such order or finding.

Id. § 1677j(b)(3).

Thus, even if the court were to read <u>Duferco</u> narrowly and hold that <u>Duferco</u> only applied to the Orders' physical description of merchandise, which the court is not inclined to do, the court could not ignore Congress's mandate in the anticircumvention statute.

Third, in order to avoid the requirements of § 1677j but yet to include the OCTG heat treated in third countries within the scope of the Orders, Defendant claims that § 1677j serves a different purpose and therefore is not applicable here.  Defendant argues "Commerce conducts substantial transformation inquiries pursuant to its authority to clarify an order's scope, while it conducts circumvention inquiries pursuant to 19 U.S.C. § 1677j in response to allegations by parties that evasion of an order is occurring."  Def.'s Resp. 21.  Defendant's response assumes the very point at issue, <u>i.e.</u>, whether OCTG heat treated in third countries is within the scope of the Orders.  In other words, according to Defendant, Commerce can conduct a substantial transformation analysis to find that the OCTG heat treated in third countries is covered by the scope of the Orders because OCTG heat treated in third countries is within the scope of the Orders.  The cases cited by Defendant and Defendant-Intervenors do not support their position that Commerce had the authority to employ a substantial transformation test to find OCTG heat treated in third countries to be within the scope of the Orders.[16]  Defendant also contends that

---

[16] Defendant cites to <u>Smith Corona Corp. v. United States</u>, 17 CIT 47, 811 F. Supp. 692 (1993), stating that there the court held "that Commerce's substantial transformation test 'reasonably identif[ied] the country in which parts or components are 'produced.'"  <u>See</u> Def.'s Resp. 14 (citing <u>Smith Corona</u>, 17 CIT at 50, 811 F. Supp. at 695).  This quotation is inapposite.  <u>Smith Corona</u> dealt with whether third country parts used to make portable electric typewriters could be considered for value comparison purposes in a 19 U.S.C. § 1677j(a)(1)(B) circumvention inquiry.  The relevant portion of the statute required

(footnote continued)

Commerce's use of substantial transformation is necessary because § 1677j is only applied in response to allegations of circumvention.  See Def.'s Resp. 21, 24.  This is simply not the case; Commerce may self-initiate a § 1677j(b) inquiry pursuant to its own regulations.  See 19 C.F.R. § 351.225(b).

The circumvention analysis under § 1677j(b) is the required statutory framework for analyzing the scope of an order when the merchandise is completed or assembled in third countries from subject merchandise or components produced in the subject country. A country of origin analysis utilizing the substantial transformation test could only be applicable, if at all, where the circumvention test of § 1677j(b) could not apply.  That is to say, there may be situations in which § 1677j(b) does not apply, and thus Commerce may

---

Commerce to compare the value of "parts or components produced in the foreign country with respect to which . . . [the antidumping] order . . . applies."  See 19 U.S.C. § 1677j(a)(1)(B).  The court determined that Commerce had developed reasonable standards for determining where parts or components were produced.  Smith Corona, 17 CIT at 50, 811 F. Supp. at 695.  Whether or not Commerce could forgo a circumvention inquiry by virtue of a substantial transformation analysis was not before the court.  In fact, the court clarifies that 19 U.S.C. § 1677j(b) provides the requisite criteria for merchandise further finished in third countries to be included within the scope of an antidumping order. Id. at 50 n.3, 811 F. Supp. at 696 n.3.

Similarly, Appleton, Advanced Tech., Ugine, and Belgium do not aid Defendant's and Defendant-Intervenors' argument because in those cases the subject merchandise was exported from a third country to the country subject to the applicable order before being imported.  Thus, unlike this case, in each of the cases cited by Defendant, 19 U.S.C. § 1677j was not applicable because the merchandise was exported from a third country to the country subject to an antidumping duty order.  As a result, these cases do not provide Commerce with the authority to engage in a substantial transformation analysis where facts are so distinguishable. See Belgium, 551 F.3d at 1344–45; Appleton Papers Inc. v. United States, 37 CIT __, __, 929 F. Supp. 2d 1329, 1333 (2013); Advanced Tech. & Materials Co., Ltd. v. United States, Slip Op. 11-122, 2011 WL 5191016, at *4–5 (CIT Oct. 12, 2011); Ugine and ALZ Belgium, N.V. v. United States, 31 CIT 1536, 1541–42, 517 F. Supp. 2d 1333, 1337–38 (2007).

have the discretion to utilize a substantial transformation analysis for some purpose relating to the scope of an order.  Section 1677j(b) does apply here, however, so the court declines to address the appropriateness of utilizing a substantial transformation analysis. However, the court notes that the cases cited by Defendant to support its use of the substantial transformation test involve scenarios where § 1677j(b), by its terms, would not apply, i.e., where merchandise manufactured in a third country is subsequently processed in a subject country.  See Belgium, 551 F.3d at 1344–45; Appleton Papers Inc. v. United States, 37 CIT __, __, 929 F. Supp. 2d 1329, 1333 (2013); Advanced Tech. & Materials Co., Ltd. v. United States, Slip Op. 11-122, 2011 WL 5191016, at *4–5 (CIT Oct. 12, 2011); Ugine and ALZ Belgium, N.V. v. United States, 31 CIT 1536, 1541–42, 517 F. Supp. 2d 1333, 1337–38 (2007).  It is difficult to imagine why Congress would have enacted § 1677j(b) if Commerce, as it claims it can here, could simply have found that merchandise processed in a third country had not undergone a substantial transformation to bring it within the scope of the order.  See H.R. Rep. No. 100–576, at 599–600 (1988), reprinted in 1988 U.S.C.C.A.N. 1547, 1632–33.  Where Congress writes a statute with specific substantive standards, the court is hard pressed to say that it is merely an alternative to an agency-created device to achieve the same purpose.  Such a result would render § 1677j(b) superfluous.  The court is not prepared to accept Defendant's argument that substantial transformation and anticircumvention provide Commerce with two distinct approaches to achieve the same result, giving Commerce discretion to choose whichever framework it sees fit.

Finally, Defendant attempts to explain Commerce's statements in its Preliminary and Final Scope Rulings, in which Commerce stated that the language of the Orders "irrelevant."  See Def.'s Resp. 13–15, 24–25; Final Scope Ruling at 9.  As discussed above, Commerce indicated that it was not relying upon the words of the Orders to make its determination.  Therefore, in Commerce's view, "[w]hether or not the scope language is clear under 19 CFR [§] 351.225(k) is irrelevant to the separate question of whether subject merchandise was substantially transformed such that it is now the product of a different, non-subject country."  Final Scope Ruling at 9.

In its brief, Defendant argues that Plaintiff has mischaracterized Commerce's approach, and Defendant states that Commerce was not refusing to analyze the Orders' scope, but rather finding that the subsection (k) factors only addressed the nature of the merchandise itself and not the country of origin of that merchandise.  See Def.'s Resp. 15.  But Defendant argues "Commerce was expressing the basic fact that 'the physical merchandise and the country-of-origin are two separate parameters for defining merchandise subject to an order.'"  Id. (quoting Ugine, 31 CIT at 1551, 517 F. Supp. 2d at 1345).  "Doing so did not expand the scope of the Orders; it simply meant that Commerce was analyzing a different aspect of the scope."  Id.

Accepting Defendant's characterization of Commerce's rationale in its rulings, Commerce still did not look to the words of the Orders to reach its conclusion.[17]

---

[17] Indeed, Defendant's only interpretive argument that addresses the scope language seems to be a burden shifting argument to avoid responsibility in interpreting the scope of an order.  See Def.'s Resp. 18.  Defendant suggests requiring the party arguing for

(footnote continued)

Defendant is again trying to argue that it does not need to look to the words of the Orders (words that Commerce wrote) because Duferco does not apply to the question of whether the goods are from China. The court understands Defendant's position and, in the absence of 19 U.S.C. § 1677j(b), perhaps one could muster an argument in favor of it. But there is no principled way to justify Congress's enactment of § 1677j(b) with Defendant's position that it can bifurcate its analysis into two "different aspect[s] of the scope," physical description of merchandise and country of origin, so that it can utilize an extra-statutory test. If Defendant's bifurcation theory were correct, there would be no need, indeed no purpose, for § 1677j(b). Moreover, while Defendant now contends that the regulations under 19 C.F.R. § 351.225(k) do not provide Commerce with the tools for analyzing the "separate parameter" of country of origin, Commerce in fact began its analysis employing the (k)(1) and (k)(2) factors and abandoned it in favor of the substantial transformation test. It is unclear to the court why Commerce believed that the (k)(1) and (k)(2) factors provided for in its own regulations were not useful in answering the interpretive question before it. Certainly, Defendant-Intervenors, Petitioners below, thought (k)(1) and (k)(2) were useful to address the interpretive question. Petition at 6–7, 10 (explaining 19 C.F.R. § 351.225(k) is the applicable legal standard and claiming (k)(1) is dispositive). Whatever reason Commerce had for abandoning an interpretive approach in conducting its scope inquiry, it acted contrary to law when it did so.

_____

exclusion of merchandise to show exclusionary language from the scope, but such a result is incompatible with Duferco. See id.; see also Duferco, 296 F.3d at 1096 (providing that Commerce does not presumptively have authority where such authority is not expressly denied).

Defendant's only argument addressing the interpretation of the scope language is that "absent affirmative evidence that such products were meant to be *excluded*, Commerce may lawfully consider those products using the substantial transformation criteria."  Def.'s Resp. 18.  To the extent Defendant is arguing the burden to interpret scope language to exclude certain merchandise is on the party arguing for its exclusion, Defendant's argument misunderstands Duferco.  Under Duferco, "Commerce cannot find authority in an order based on the theory that the order does not deny authority."  Duferco, 296 F.3d at 1096.

When the scope language does not clearly include the merchandise in question, Commerce cannot require an interested party to provide additional evidence that the scope language was not meant to include the merchandise.   Furthermore, Defendant's position would mean Petitioners could omit any reference to the third country processing during the investigation, and then after publication of the final order seek a scope ruling to add merchandise processed in third countries to the scope of an order based on Commerce's discretionary substantial transformation factors.   Such a result would undermine the petition process.  When there is no written language in the scope or in the record to confirm the existence of such a practice, the failure to clearly incorporate such an intent in the scope language cannot create the presumption of inclusion.

Defendant-Intervenor Maverick argues that the scope language clearly and unambiguously covers OCTG finished in third countries.   Maverick's Resp. 12–22. Maverick believes that the scope language covers OCTG "regardless of where finished." Id. at 12.  Plaintiff takes issue with Maverick's argument regarding the meaning of the

scope language.  Reply Br. Pl. Supp. Mot. J. Agency R. 11–12, 18, Feb. 11, 2015, ECF

No. 68.  The court does not need to address this disagreement because Commerce did

not base its ruling on the scope language.  See generally Final Scope Ruling.  Rather,

Commerce found that it could not determine that the language of the Orders reached the

product and after embarking on an interpretive analysis under the (k)(1) and (k)(2) factors

it abandoned that analysis in favor of a wholly extraneous test.  Final Scope Ruling at 4,

7, 9.

Defendant-Intervenors Boomerang and U.S. Steel both argue that Commerce may

utilize a substantial transformation analysis to find Plaintiff's merchandise within the scope

of the Orders.  Their arguments are based upon their view that the scope is composed of

both the "physical characteristics of the product" and the origin of the merchandise.  Br.

Def.-Intervenors Boomerang Tube LLC Opp'n Pl's Mot. J. Agency R. 3–4, Jan. 14, 2015,

ECF No. 55 ("Boomerang's Resp."); U.S. Steel's Resp. 18–19.  Boomerang assumes that

Commerce is free to determine where merchandise is from using a substantial

transformation test, regardless of what the language of the scope actually says.

Boomerang's Resp. 3–4.  As noted above, this position is contrary to the holding of

Duferco, which requires Commerce to interpret the actual words of an order when it

conducts a scope inquiry, and directly conflicts with Congress's mandate pursuant to 19

U.S.C. § 1677j(b).  U.S. Steel, on the other hand, argues that Commerce is actually

interpreting the language in the Orders that refers to finished and unfinished OCTG from

China.  U.S. Steel's Resp. 18–19.  Although U.S. Steel's argument would at least be

consistent with Duferco's requirement that Commerce interpret the actual language of the

Orders, Commerce did not interpret the language of the Orders.  In fact, Commerce conceded it was not doing an interpretive analysis at all.  On remand Commerce must identify actual language from the scope of the Orders that could be reasonably interpreted to include OCTG finished in third countries in order to find that the merchandise is covered by the scope of the Orders.

## CONCLUSION

The court determines that Commerce failed to interpret the scope language of the Orders, and, in so doing, Commerce impermissibly expanded the scope of the Orders. In accordance with the foregoing, it is hereby

**ORDERED** that Commerce's determination is remanded for further consideration consistent with this opinion; and it is further,

**ORDERED** that Commerce shall file its remand determination with the court within 60 days of this date; and it is further,

**ORDERED** that Plaintiff shall have 30 days thereafter to file objections; and it is further,

**ORDERED** that Defendant and Defendant-Intervenors shall have 15 days thereafter to file their respective responses.


                                                         /s/ Claire R. Kelly
                                                        Claire R. Kelly, Judge


Dated:July 9, 2015
          New York, New York